UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

20-60003-CR-DIMITROULEAS/SNOW

CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

STEVEN ALLEN SCHWARTZ,

Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1. 1 Global Capital LLC ("1 Global") was a Florida limited liability company with its principal place of business in Hallandale Beach in Broward County, Florida.

2. Individual #1 acted as the Chief Executive Officer and Chairman of 1 Global from at least in or around February 2014 through in or around July 2018.

3. **STEVEN ALLEN SCHWARTZ** was employed as a consultant and a director of 1 Global from in or around 2014 through in or around July 2018. **SCHWARTZ** was also 1 Global's Chief Operating Officer ("COO") according to certain marketing materials used to raise money for 1 Global.

4. Alan G. Heide was employed at 1 Global from in or around February 2014 through in or around August 2017, initially as the Chief Financial Officer and later as the Executive Vice President and Director of Syndicate Partner Relations.

5. Attorney #1 was an attorney licensed in the State of Florida who worked at Law Firm #1 and acted in a fundraising capacity at 1 Global.

6. Jan Douglas Atlas was an attorney licensed in the State of Florida and was a partner at Law Firm #1, and purported to serve as outside legal counsel for 1 Global.

7. Law Firm #1 was a law firm in the Southern District of Florida.

8. Audit Firm #1 was an accounting and audit firm in the Southern District of Florida.

## CONSPIRACY TO COMMIT WIRE FRAUD AND SECURITIES FRAUD
### (18 U.S.C. § 371)

From in or around 2014 through in or around July 2018, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**STEVEN ALLEN SCHWARTZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with Individual #1, Attorney #1, Alan G. Heide, Jan Douglas Atlas, and other persons known and unknown to the United States Attorney, to commit certain offenses against the United States, namely:

    a. wire fraud, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343; and

b. securities fraud, that is, to knowingly, willfully, and unlawfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities; in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

**PURPOSE OF THE CONSPIRACY**

9. It was a purpose of the conspiracy for the defendant and his conspirators to use false and fraudulent statements to investors concerning the operation and profitability of 1 Global, as well as the nature, risks, and suitability of 1 Global's investments, so that investors would provide funds to 1 Global, and continue to make false statements to investors thereafter so that investors would not seek to withdraw funds from 1 Global, all so that the conspirators could misappropriate investors' funds for their own personal use and enjoyment.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the defendant and his conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

10. Individual #1 owned and controlled 1 Global through certain entities that he also controlled, including a purported family trust for which **STEVEN ALLEN SCHWARTZ** was the

3

designated trustee. Individual #1 had ultimate decision-making authority at 1 Global and was actively involved in financial matters, marketing, payments, and interactions with persons and entities who provided funding to 1 Global. **SCHWARTZ** communicated frequently with Individual #1 about 1 Global's operations.

11.   1 Global purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. 1 Global obtained funds for its operations and other purposes by raising money from investors (sometimes referred to as "lenders" or "syndicate partners") in the form of investment contracts with the promise of a return on the investor's investment. Individual #1, Attorney #1, Alan G. Heide, **STEVEN ALLEN SCHWARTZ**, and their conspirators made false and misleading representations, and caused false and misleading representations to be made, to investors and potential investors as to the profitability of 1 Global's business and, once an investment was made, concerning the status and profitability of investors' investments. Individual #1, Attorney #1, Heide, **SCHWARTZ**, and their conspirators caused these false statements to be made in marketing materials and periodic account statements that were transmitted via the U.S. mail and in interstate email communications.

12.   1 Global raised money from investors by representing that all or nearly all of that money would be applied to various MCA agreements with the investor supposedly receiving a portion of the proceeds paid back by the merchants under the MCA agreements. 1 Global purportedly applied a portion of the investor's funds to MCA loans and held the remaining portion as "cash not deployed" in its own accounts until it could be utilized as part of an MCA loan. In reality, at the direction of Individual #1, other conspirators caused funds obtained from investors to be used for purposes other than MCA loans in a manner that benefited Individual #1 and the conspirators and that was inconsistent with the representations made to investors as to how their funds would be used.

4

13. Throughout the operation of 1 Global, investors and potential investors raised questions about the financial condition of 1 Global, whether 1 Global had an independent auditor who performed an independent audit or financial analysis related to 1 Global, and the status of investors' investments. Individual #1, Alan G. Heide, and other conspirators participated in providing false and misleading statements to investors that gave the false impression that 1 Global had an independent auditor:

   a. In or around November 2015, Individual #1 directed Heide to cause monthly statements to be sent to investors via the U.S. mail that gave the false impression that the return reported to investors had been independently verified by an outside audit firm, Audit Firm #1.

   b. In or around July 2016, at the direction of Individual #1, Heide and others changed the wording of the monthly investor statements and described Audit Firm #1 as the "independent audit firm" for 1 Global. This was false, because 1 Global never had an independent audit. Nonetheless, Individual #1, Heide, and others continued to falsely describe the role of Audit Firm #1 to investors and potential investors in periodic account statements, marketing materials sent via email and interstate wires, and conversations in order to provide false comfort to investors.

14. While employed by 1 Global, **STEVEN ALLEN SCHWARTZ** recognized that 1 Global investors received misleading financial information about 1 Global's performance. Among other things, **SCHWARTZ** recognized that 1 Global did not enter into enough MCA agreements to produce the returns on investment (i.e., profit) that investors were told they were receiving on their 1 Global investment. **SCHWARTZ** also knew from Individual #1 and others that many MCA borrowers to whom 1 Global gave funds defaulted on the MCA or did not pay off

the MCA at the rate required under the agreements. These difficulties with repayment meant that 1 Global could not be generating the returns on investments that the investors were being told.

15. While employed by 1 Global, **STEVEN ALLEN SCHWARTZ** also knew that 1 Global investors received misleading information about how investor monies were being used, and that investors were not being told that their funds were being used for purposes other than MCA agreements. As time went on, at the direction of Individual #1, 1 Global used the "cash not deployed" funds that were received from new investors: (a) to fund ongoing operating expenses, as 1 Global experienced ongoing losses, including for large commission payments to 1 Global employees or contractors who raised investor money; (b) to pay personal expenses of Individual #1 and his family members; (c) to fund other businesses unaffiliated with 1 Global for which Individual #1 and his family members would receive an ownership interest, but the 1 Global investors would receive no interest; and (d) to pay back earlier investors who sought to cash out of their investments, but for which there were insufficient proceeds generated from the MCA loans to fund such payments.

16. In or around June and July 2016, **STEVEN ALLEN SCHWARTZ** became aware that 1 Global had received written legal advice authored by an outside law firm retained by 1 Global (hereinafter, the "Securities Memorandum"). In the memorandum, outside counsel warned that 1 Global was improperly offering unregistered securities, in violation of federal law. **SCHWARTZ** was told by conspirators that such an opinion, if made public and followed, could end 1 Global's operations, as 1 Global could not comply in practice with securities laws given its shortfall and missing funds. Instead of informing investors, **SCHWARTZ** allowed others at 1 Global, including Individual #1, Jan Douglas Atlas, Attorney #1, and Alan G. Heide, to conceal the outside legal memorandum, and to continue its operations in contravention of the legal advice it had received. Instead of following the advice contained in the Securities Memorandum,

6

Individual #1, **SCHWARTZ**, Attorney #1, and conspirators chose to rely on false legal cover created by opinion letters authored by Atlas, which relied on false and misleading versions of the facts in order to come to the conclusion that 1 Global's offering was not a security. As a result of Individual #1 and conspirators' conduct, the significant risk that 1 Global's business practices violated U.S. securities law continued to be concealed from investors for over two years.

17. On or about July 27, 2018, 1 Global filed for bankruptcy, after having fraudulently raised more than $287 million from more than 3,400 investors. As of approximately June 30, 2018, 1 Global's internal financial records showed a cash shortfall of more than $50 million in missing investor funds.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about June 5, 2014, in Broward County, Florida, **STEVEN ALLEN SCHWARTZ**, Individual #1, and others executed a notarized document in which **SCHWARTZ** agreed to serve as trustee for Individual #1's purported family trust, and in which Individual #1 agreed to relinquish all of his possession or enjoyment of, or right to the income from, the trust property, and all of Individual #1's right and power, "whether alone or in conjunction with others, to designate the persons who shall possess or enjoy the trust property or the income therefrom." According to this agreement, the trust property was described as "200 shares (representing 100% of the issued and outstanding shares) of 1 Global Capital, LLC."

2. On or about June 12, 2014, at a Bank of America branch in Hallandale Beach, Florida, **STEVEN ALLEN SCHWARTZ** deposited check no. 489, which was from Individual

7

#1's Bank of America account ending in 6694, dated June 5, 2014, and made out to **SCHWARTZ**, as trustee for Individual #1's purported family trust, in the approximate amount of $50,000.

3. On or about November 3, 2015, in Hallandale Beach, Florida, Alan G. Heide transmitted an email to Investment Advisor A, copied to Individual #1 and other 1 Global executives, that passed through and was located on computer servers in Louisiana, that included a pitch deck marketing package concerning 1 Global, containing false and misleading statements, including that an "External Independent CPA Firm validates Syndicate Partner [investor] portfolio balances quarterly."

4. On or about June 6, 2016, in Hallandale Beach, Florida, Alan G. Heide caused an investor statement to be sent via U.S. Mail to Investor 1 in Baton Rouge, Louisiana, falsely describing the status of the investor's investment in 1 Global and stating that "[o]ur independent audit firm [Audit Firm #1], has endorsed and agrees with the ROI [return on investment] formula."

5. On or about November 8, 2016, E.A., an employee of 1 Global, sent an email to S.Z., another employee at 1 Global, copying **STEVEN ALLEN SCHWARTZ**, in which E.A. stated, "We are expecting a debit card replacement for [Individual #1's purported family trust] to the attention of Mr. Steven Schwartz, likely to arrive in the next couple days. When you receive it, please let me know since I need the card in order to create wire transfers from [Individual #1's purported family trust] to the Pay Now Direct account. Thank you."

6. On or about February 15, 2017, Individual #1 forwarded **STEVEN ALLEN SCHWARTZ** an email, via interstate wire, in which Individual #1, Alan G. Heide, and another 1 Global employee discussed the possibility that 1 Global's business constituted the unregistered sale of securities. In response to comments made by the 1 Global employee about the Securities Memorandum—which the employee referred to explicitly—Individual #1 responded, "Why are you putting this in writing . . . What's wrong with you?"

8

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **STEVEN ALLEN SCHWARTZ**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, made applicable through Title 28, United States Code, Section 2461(c).

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
JERROB DUFFY
ASSISTANT UNITED STATES ATTORNEY

_____
LISA H. MILLER
ASSISTANT UNITED STATES ATTORNEY

_____
ROBERT ZINK
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

_____
L. RUSH ATKINSON
ASSISTANT CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| STEVEN ALLEN SCHWARTZ, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant. _____ / | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | | New Defendant(s) | Yes ___ No ___ |
|---|---|---|---|---|---|
| ___ Miami | ___ Key West | | | Number of New Defendants | ___ |
| _X_ FTL | ___ WPB | ___ FTP | | Total number of counts | ___ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take    0    days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                      (Check only one)

   | I   | 0 to 5 days      | _X_ | Petty   | ___ |
   |-----|------------------|-----|---------|-----|
   | II  | 6 to 10 days     | ___ | Minor   | ___ |
   | III | 11 to 20 days    | ___ | Misdem. | ___ |
   | IV  | 21 to 60 days    | ___ | Felony  | _X_ |
   | V   | 61 days and over | ___ |         |     |

6. Has this case been previously filed in this District Court?   (Yes or No)    No
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    Yes ___    No _X_

LISA M. MILLER
ASSISTANT UNITED STATES ATTORNEY
COURT ID NO. A5502054

*Penalty Sheet(s) attached                                                                REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  STEVEN SCHWARTZ

**Case No:** _____

Count #: 1

Conspiracy to Commit Securities Fraud and Wire Fraud

Title 18, United States Code, Section 371

*__Max. Penalty:__ Five years' imprisonment

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| STEVEN SCHWARTZ, | ) | |
| | ) | |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

JACK FRIEDLANDER, ESQ.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*