UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60003-CR-ALTMAN

UNITED STATES OF AMERICA

v.

STEVEN ALLEN SCHWARTZ,

        Defendant.
_____/

**PLEA AGREEMENT**

The United States of America and Steven Allen Schwartz (hereinafter "Schwartz" or "Defendant") enter into the following agreement:

1.  The Defendant understands that he has the right to have the evidence and charges against him presented to a federal grand jury for determination of whether or not there is probable cause to believe he committed the offenses with which he is charged. Understanding this right, and after full and complete consultation with his counsel, the Defendant agrees to waive in open court his right to prosecution by indictment and agrees that the United States may proceed by way of an information to be filed pursuant to Rule 7 of the Federal Rules of Criminal Procedure.

2.  The Defendant agrees to plead guilty to one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, all in violation of Title 18, United States Code, Section 371. In exchange for Defendant's agreement to plead guilty, and for fulfilling all of his other obligations set forth in this Plea Agreement (hereinafter "Agreement"), and subject to the limitations and

provisions set forth in the Agreement, the Office of the United States Attorney for the Southern District of Florida and the U.S. Department of Justice, Criminal Division, Fraud Section (hereinafter "Office"), agrees not to prosecute Defendant for any other offenses arising out of the conduct described in paragraph 19 below. This Agreement includes only the conduct set forth in paragraph 19 below, and excludes crimes of violence and any tax offense. This Agreement is also limited to this Office, and as such, does not and cannot bind other federal, state, regulatory, or local prosecuting authorities. This Agreement is further conditioned on Defendant's fulfilling all of the terms of this Agreement.

3. The Defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the

statutory maximum authorized by law for the offense identified in paragraph 2, and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.

4.  The Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of five years for the count to be charged in the Information (*i.e.*, the conspiracy to commit wire fraud and securities fraud, in violation of Title 18, United States Code, Section 371), followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or double the gross gain or gross loss, and must order restitution. The Defendant further understands and acknowledges that, in addition to any sentence imposed, a special assessment in the amount of $100 will also be imposed on the Defendant. The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing unless he is deemed financially unable to do so by the Court.

5.  The Defendant agrees that he will make restitution payments in an amount to be determined by the Court. The Defendant understands and agrees that the Government and any victims of the crime charged in Count 1 of the information may provide evidence to the Court for the purpose of a determination as to restitution. The Defendant understands and agrees that the term "victim" means a person or entity directly and proximately harmed as a result of the commission of an offense of conviction for which restitution may be ordered including, in the case of a scheme, pattern, or conspiracy, any person directly harmed by the Defendant's criminal conduct in the course of the scheme, pattern, or conspiracy, as set forth in Title 18, United States Code, Section 3663A. The parties reserve the right to argue the appropriate amount of restitution at the time of sentencing, or at a restitution hearing.

6. The Defendant agrees in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense to which is pleading guilty pursuant to Title 18 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

7. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution order, or any penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to any forfeited property. In addition, the defendant agrees to waive any applicable time limits for administrative or judicial forfeiture proceedings brought against any forfeited property, and any appeal of the forfeited property.

8. The defendant also agrees to assist this Office in all proceedings, administrative or judicial, involving forfeiture to the United States of any property, including substitute property, regardless of its nature, form, or location. The assistance shall include: full disclosure of any asset, identifying any property subject to forfeiture, providing testimony before a federal grand jury or in an administrative or judicial proceeding, consenting to the entry of an order enjoining the transfer or encumbrance of such property, and transferring such property to the United States by delivering to this Office, upon this Office's request, any necessary and appropriate documentation, including consents to forfeiture and quit claim deeds, to deliver good and marketable title to such property.

9. The Defendant agrees that upon executing this Agreement, during the pendency of this case, including any period of supervised release that may be imposed, Defendant will have no

4

involvement, directly or indirectly, in the offer or sale of securities, or as an employee, contractor, or agent of any entity that is an issuer of securities, absent prior authorization of the Court.

10. The Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Agreement, the Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

11. The Office will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the Defendant's offense level is determined to be 16 or greater, the Government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the court to allocate their resources efficiently. The United States, however, will not be required to make these recommendations if the Defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the Government prior to entering into this Agreement; or (c) commits any misconduct after entering into this Agreement, including but not limited to

committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any Governmental entity or official.

12. The Office and the Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the Defendant shall plead:

    a. <u>Applicable Guideline Offense and Base Offense Level</u>:

    Pursuant to Section 2B1.1(a)(2) of the Sentencing Guidelines, the offense guideline applicable to Count One, the base offense level is 6.

    b. <u>Specific Offense Characteristics</u>:

    The parties agree and stipulate that the following offense characteristics apply: (1) The parties reserve their respective positions as to the applicable loss to be applied under Section 2B1.1(b)(1), and that each party may make any factual or legal arguments it deems appropriate at the time of sentencing as to this characteristic; (2) the offense involved 10 or more victims pursuant to Section 2B1.1(b)(2)(A)(i), resulting in a 2-level increase; and (3) the government contends that the offense involved sophisticated means under Section 2B1.1(b)(10)(C), which should result in an additional 2-level increase, but the Defendant may make arguments opposing its application at sentencing.

    c. <u>Variance</u>:

    Based on the age and health condition of the Defendant, pursuant to Sections 5H1.1 and 5H1.4, the Office agrees that a two-level downward variance is warranted.

d. <u>Role:</u>

Neither an upward nor a downward role adjustment applies to Defendant. The Office and the Defendant both agree to jointly recommend application of the above guidelines, except each party reserves its position as to applicable loss. This Agreement does not prohibit Defendant from arguing for a downward departure pursuant to Section 2B1.1, Application Note 20, or a variance, as described in Section 1B1.1, Background, with respect to the amount of proceeds the Defendant actually received relative to the loss amount that applies for guideline calculation purposes. The Defendant may make such a variance argument as to the guideline calculation only after recommending application of the above-referenced guidelines. The Government has informed the Defendant that it will oppose any such argument, but reserves its position. After recommending that the Court apply the guidelines in a manner consistent with this paragraph, either party may make additional sentencing arguments, including as to the ultimate sentence requested, under the factors set forth in 18 U.S.C. § 3553(a).

13. The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant also is aware that any estimate of the probable sentencing range or sentence that the Defendant may receive, whether that estimate comes from the Defendant's attorney, the Government, or the probation office, is a prediction, not a promise, and is not binding on the Government, the probation office or the Court. The Defendant understands further that any recommendation that the Government makes to the Court as to sentencing, whether pursuant to this Agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The Defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the Defendant may not withdraw his plea based upon the

7

Court's decision not to accept a sentencing recommendation made by the Defendant, the Government, or a recommendation made jointly by both the Defendant and the Government.

14. The Defendant agrees that he shall cooperate fully with this Office by, among other things: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) cooperating with any regulatory agency as requested by this Office. In addition, the Defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he will not commit any further crimes.

15. The Office reserves the right to evaluate the nature and extent of the Defendant's cooperation and to make the Defendant's cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the Defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the advisory sentence calculated under the Sentencing Guidelines, this Office may at or before sentencing make a motion consistent with the intent of Section 5K1.1 of the Sentencing Guidelines prior to sentencing, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the Defendant has provided substantial assistance and recommending that the Defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines. The Defendant understands and agrees, however, that nothing in this Agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the Defendant's cooperation shall

be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

16.     The Defendant understands and acknowledges that the Court is under no obligation to grant the motion(s) referred to in this Agreement should the Government exercise its discretion to file any such motion. The Defendant also understands and acknowledges that the Court is under no obligation to reduce the Defendant's sentence because of the Defendant's cooperation.

17.     The Defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the Office in this Agreement, the Defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The Defendant further expressly waives his right to appeal based on arguments that (a) the statute to which the Defendant is pleading guilty is unconstitutional and (b) the Defendant's admitted conduct does not fall within the scope of the statute. The Defendant further understands that nothing in this Agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the Defendant's sentence pursuant to Sections 3742(b) and 1291, the Defendant shall be released from the above waiver of appellate rights. By signing this Agreement, the Defendant acknowledges that the Defendant has discussed the appeal waiver set forth in this Agreement with the Defendant's attorney.

18. In the event the Defendant withdraws from this Agreement prior to pleading guilty or breaches the Agreement before or after he pleads guilty to the charges identified in paragraph two (2) above or otherwise fails to fully comply with any of the terms of this Agreement, this Office will be released from its obligations under this Agreement, and the Defendant agrees and understands that: (a) the Defendant thereby waives any protection afforded by any proffer letter agreements between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and that any statements made by the Defendant as part of plea discussions, any debriefings or interviews, or in this Agreement, whether made prior to or after the execution of this Agreement, will be admissible against the Defendant without any limitation in any civil or criminal proceeding brought by the Government; and (b) the Defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this Agreement, of any documents provided by the Defendant or the Defendant's representatives to any state or federal agency and/or this Office.

19. The Defendant hereby (a) confirms that he has reviewed the following facts with legal counsel; (b) adopts the following factual summary as his own statement; (c) agrees that the following facts are true and correct; (d) stipulates that the following facts provide a sufficient factual basis for the plea of guilty in this case, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure; and (e) acknowledges and agrees that these are facts sufficient to support his guilt, but that this factual summary is merely a summary, and does not include all facts known to Defendant regarding his criminal conduct and the individuals and entities involved:

> From in or around 2014 through in or around July 2018, Defendant Steven Allen Schwartz ("Schwartz" or "Defendant") worked at 1st Global Capital LLC, as a consultant, a "Director" and, according to marketing materials disseminated by the company, a Chief Operating Officer ("COO"). 1st Global Capital LLC was

owned and/or controlled, directly and indirectly, by Individual #1. 1st Global Capital LLC and certain of its affiliate and predecessor entities (collectively "1 Global"), was used by Individual #1 to fund other businesses that Individual #1 owned or controlled, directly or indirectly, including through certain trust or nominee ownership arrangements. Defendant acted at the direction of Individual #1 throughout his employment, and Individual #1 was actively involved and had ultimate decision authority in all financial matters, marketing, payments, and interactions with persons and entities who provided funding to 1 Global.

1 Global purportedly operated as a lending business to merchants, providing short-term loans referred to as merchant cash advance ("MCA") loans. 1 Global raised money from investors and purportedly applied some or all of that money to MCA agreements, with the investor supposedly subsequently receiving a portion of the proceeds paid back by the merchant under the MCA agreements. Ultimately, 1 Global marketed this investment to many unsophisticated investors, as well as sophisticated investors.

While employed by 1 Global, Defendant recognized that 1 Global investors received misleading financial information about 1 Global's performance. Among other things, Defendant recognized that 1 Global did not enter into enough MCA agreements to produce the favorable returns on investment (i.e., the profit) that investors were told they were receiving on their 1 Global investment. Defendant also knew from Individual #1 and others that many MCA borrowers to whom 1 Global gave funds defaulted on the MCA or did not pay off the MCA at the rate required under the agreements. These difficulties with repayment meant that 1 Global could not be generating the returns on investments that 1 Global investors were being told.

While employed by 1 Global, Defendant also knew that 1 Global investors received misleading information about how investor monies were being used, and that investors were not being told that their funds were being used for purposes other than MCA agreements. As time went on, at the direction of Individual #1, 1 Global used the funds that were received from new investors, to fund (a) ongoing operating expenses, as 1 Global experienced ongoing losses, including for large commission payments to 1 Global employees or contractors who raised investor money; (b) personal expenses of Individual #1 and his family members; (c) other businesses unaffiliated with 1 Global for which Individual #1 and his family members would receive an ownership interest, but the 1 Global investors would receive no interest; and (d) to pay back earlier investors who sought to cash out of their investments, but for which there were insufficient proceeds generated from the MCA loans to fund such payments.

In or around June 2014, Defendant agreed to serve as the nominal trustee of, and executed trust documents for, two trusts for which Individual #1 served as the grantor: (1) Individual #1's purported family trust; and (2) Individual #1's purported art trust. These trusts were purportedly created for the benefit of

Individual #1's wife and children, but operated in a manner such that Individual #1 retained control over the assets placed in the trusts. In particular, 1 Global and other companies controlled by Individual #1 were purportedly transferred to the family trust, and became the "trust property" affiliated with Individual #1's purported family trust. Art and other property worth several million dollars were the "trust property" affiliated with Individual #1's purported art trust. Individual #1 created both of these trusts in an attempt to shield his assets from corporations and individuals to whom he and his prior failed businesses owed money, as well as in an attempt to shield his assets from other creditors and/or federal agencies. Individual #1 further directed that 1 Global investor funds be transferred to accounts in the name of the family trust to pay his purported "annuity," and ultimately, directed that millions of dollars be diverted from 1 Global through accounts held by the family trust to other accounts and to pay other expenditures for the benefit of himself and his family members.

In or around June and July 2016, Defendant became aware that 1 Global had received two legal memoranda authored by an outside law firm that was retained by 1 Global (hereinafter, the "Securities Memoranda"). In the Securities Memoranda, outside counsel warned that 1 Global was improperly offering unregistered securities, in violation of federal law. Defendant was told by conspirators that such an opinion, if made public and followed, could end 1 Global's operations. Instead of informing investors of this material risk, Defendant allowed others at 1 Global to conceal the outside legal memoranda, and allowed 1 Global to continue its operations in contravention of the legal advice it had received. The significant risk that 1 Global's business practices violated U.S. securities law continued to be concealed from investors for over two years.

In addition to the above-described omissions and misrepresentations, Defendant – who himself had invested in 1 Global, and thus received periodic statements regarding his investment containing the same representations made to other investors – was aware of misrepresentations made to investors regarding the role of Audit Firm #1 in auditing 1 Global's rate of return and financials. Specifically, Defendant knew that, despite the fact that 1 Global had conversations with employees of Audit Firm #1, and despite 1 Global having entered certain engagement letters with Audit Firm #1, that Audit Firm #1 never completed an independent audit of 1 Global's financials. In addition, Defendant knew that, contrary to representations to investors, Audit Firm #1 did not audit 1 Global's rate of return formula every quarter. Defendant knew that Individual #1 and conspirators at 1 Global made false misrepresentations to investors and investment advisors regarding the role of Audit Firm #1 in order to provide false comfort.

On or about July 27, 2018, 1 Global filed for bankruptcy, after having raised more than $287 million from more than 3,400 investors. As of approximately June

30 2018, 1 Global's internal financial records showed a cash shortfall of tens of millions of dollars in missing investor funds.[1]

20.     This Office agrees that it will not seek additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level beyond those, if any, specifically referred to in this Agreement, except that this Office shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level beyond those, if any, specifically referred to in this Agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the Defendant's offense level would be based on conduct occurring after the Defendant enters into this Agreement.  The Defendant and the Office agree that they will jointly recommend that the Court calculate the guideline level in accordance with the calculations set forth in this Agreement.  The parties agree that the Defendant is not precluded from making additional sentencing arguments or factual presentations pursuant to 18 U.S.C. § 3553(a), and the Government may oppose any such factual presentation or argument.

---

[1]     I, Steven Allen Schwartz, after having completed plea negotiations and reached a plea agreement with the United States, hereby affirm that I understand the foregoing and voluntarily and knowingly adopt the Factual Basis set forth in paragraph 19 as my own statement. This statement is intended to be a post-plea discussion statement and is not protected by Criminal Procedure Rule 11(e)(6) or Federal Rule of Evidence 410. No promises or inducements have been made to me other than those contained in this Agreement. I am satisfied with the representation of my attorney in this matter.
Defendant _____ and Defense Counsel _____

13

21. This Agreement between the parties is the entire agreement and understanding between the United States of America and the Defendant. There are no other agreements, promises, representations, or understandings.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 1\9\2020         By: _____
                          JERROB DUFFY
                          LISA H. MILLER
                          ASSISTANT U.S. ATTORNEYS

ROBERT A. ZINK
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

Date: 1\9\2020         By: _____
                          L. RUSH ATKINSON
                          ASSISTANT CHIEF

FOR THE DEFENDANT:

Date: 1/9/2020         By: _____
                          JACK FRIEDLANDER, ESQ.
                          ATTORNEY FOR DEFENDANT

Date: 1/9/2020         By: _____
                          STEVEN ALLEN SCHWARTZ
                          DEFENDANT